Ervin T. VALANDINGHAM, Jr.,
Plaintiff–Appellant,

v.

S.G. BOJORQUEZ, Law Library Officer at ASPC–F, in his individual and official capacity; Randy Moen, Law Library Officer at ASPC–F, in his individual and official capacity; Lloyd Bramlett, Warden at the Central Unit, in his individual and official capacity; Jim Adams, Assistant Deputy Warden at ASPC–F, in his individual and official capacity; Frank Terry, Major in the Central Unit, in his individual and official capacity; Sam Lewis, Director at ADOC, in his individual and official capacity, Defendants–Appellees.

No. 87–1926.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 18, 1988.*

Decided Jan. 30, 1989.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Ervin T. Valandingham, Florence, Ariz., pro se.

Mariannina E. Preston, Asst. Atty. Gen., Phoenix, Ariz., for defendants-appellees.

Before PREGERSON, CANBY and BEEZER, Circuit Judges.

PREGERSON, Circuit Judge:

Appellant Valandingham, a prisoner in custody of the Arizona Department of Corrections, brought a § 1983 civil rights action against various employees of the Department in which he alleged that because he had petitioned prison and government officials for redress of his grievances, prison officers S.G. Bojorquez and Randy Moen had conspired to label Valandingham a "snitch" and thereby subject him to life-threatening retaliation by fellow inmates. C.R. 1 at 3–6. Valandingham also alleged that he had been denied legal materials; prohibited from communicating with other prisoners in the prison law library; threatened with disciplinary action if he discussed legal matters with other prisoners; and threatened with disciplinary action if he provided affidavits to or received affidavits from other prisoners. *Id.* at 6. Finally, he alleged that the Warden (Lloyd Bramlett), the Assistant Deputy Warden (Jim Adams), and the Major (Frank Terry), had conspired with Moen and Bojorquez to label Valandingham a "snitch" in retaliation for his legal endeavors on behalf of himself and other prisoners. *Id.* at 7.

Defendants moved to dismiss Valandingham's complaint. The district court ordered that defendants' motion to dismiss be treated as a motion for summary judgment, and on February 27, 1987 entered an Order dismissing the action. C.R. 28.

The district court's Order stated: "For all the reasons set forth in defendants' motion to dismiss, treated as a motion for summary judgment, and their reply to the response, the motion will be granted." C.R. 28 at 1. The court added: "While plaintiff complains that he is unable to use the prison law library and has been denied legal materials, it is interesting to note that he has not been inhibited in his litigation activities. He has filed the following actions in this Court alone:...." (A list of 9 lawsuits, dating from September 1984 to December 1986, followed.) *Id.* at 1–2. These statements represented all of the court's explanation for its ruling.

After the district court denied Valandingham's subsequent motion to vacate the judgment of dismissal, he brought this appeal. He is proceeding in forma pauperis and pro se.

## STANDARD OF REVIEW

■ The court reviews the granting of summary judgment *de novo*. *Levin v. Knight*, 780 F.2d 786, 787 (9th Cir.1986). *See also Oltarzewski v. Ruggiero*, 830 F.2d 136, 138 (9th Cir.1987). The reviewing court views the evidence in the light most favorable to the party against whom summary judgment was granted. *Id.*

## DISCUSSION

### I. Basis for District Court's Dismissal

Valandingham argues that the district court dismissed his action because it found that he had not been denied the use of the prison law library. Valandingham points out that he never alleged that defendants had denied him use of the prison law library. He therefore argues that the district court based its dismissal of his action on its rejection of an allegation that Valandingham never made.

In support of this argument, Valandingham points to the court's observation that "While plaintiff complains that he is unable to use the prison law library and has been denied legal materials, it is interesting to note that he has not been inhibited in his litigation activities." C.R. 28 at 1.

■ Valandingham is correct in pointing out that he never alleged that he was "unable to use the prison law library." He is wrong, however, in asserting that the district court's grant of summary judgment was premised on its belief that Valandingham had in fact been able to use the library. The court, in its Order, clearly stated that it was granting defendants' summary judgment motion "[f]or all the reasons set forth in defendants' motion to dismiss ... and their reply to the response...." C.R. 28 at 1. We must therefore decide whether these two documents justified the district court's entry of summary judgment.

### II. Summary Judgment

#### A. The Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In addition, Rule 56 provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

In ruling on a motion for summary judgment a court "must view the evidence and inferences therefrom in the light most favorable to the party opposing the motion...." *Jewel Companies v. Pay Less Drug Stores Northwest*, 741 F.2d 1555, 1559 (9th Cir.1984). We will affirm the district court's grant of summary judgment if, viewing the evidence and the inferences therefrom in the light most favorable to the party opposing the motion, we determine that there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See Oltarzewski v. Ruggiero*, 830 F.2d at 138.

#### B. The "Retaliation" ("Snitch") Claim

■ Our review of the record leads us to conclude that neither the district court nor defendants established that Valandingham's claim of retaliation failed to state a cause of action cognizable under 42 U.S.C. section 1983. *See* C.R. 28 (Order); C.R. 13 ("Motion to Dismiss"); C.R. 26 ("Reply to Response to Motion to Dismiss"). They did not mention the elements of a cause of action under section 1983, much less discuss whether Valandingham's claim articulated those elements. Rather, the defendants, and the district court in resting its

holding on defendants' arguments, merely asserted that the incidents described by Valandingham either never took place or were misdescribed by Valandingham. The defendants nowhere argued that even if the facts Valandingham alleged and subsequently supported by affidavit were true, no cause of action under section 1983 would exist. Therefore, the only possible reason for dismissal on a motion for summary judgment would have been that Valandingham failed to show the existence a genuine issue of material fact. However, as discussed below, Valandingham in fact made such a showing.

**1. Valandingham's Complaint**

■ In his complaint, Valandingham alleged that because he had petitioned prison and government officials for redress of his grievances, Bojorquez and Moen had conspired to label him a "snitch" and thereby subject him to retaliation by inmates. C.R. 1 at 3–6. He further alleged that on or about September 27, 1986, he was approached by fellow prisoners and threatened with harm because Bojorquez and Moen had told other inmates in the law library that Valandingham was a snitch. *Id.* at 6. Valandingham alleged that Bojorquez and Moen labeled him a "snitch" with the intent of having Valandingham killed by inmates. *Id.* at 9.

These allegations may support a cause of action under section 1983. If the facts alleged by Valandingham are true, he may have a claim under section 1983 not only for violation of his right to be protected from violence while in custody, but also for violation of his right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). Thus, on the facts alleged in Valandingham's complaint, there is no basis for dismissal. For dismissal to have been appropriate, therefore, the subsequent papers filed by defendants and Valandingham must have shown that there was "no genuine issue of material fact" in dispute.

**2. Defendants' Motion to Dismiss**

In their Motion to Dismiss, defendants offered their version of one of the incidents in which Valandingham alleges that he was labeled a "snitch."

On September 11, 1986, [Randy] Moen and Valandingham had a disagreement over when particular documents should be photocopied. While in Moen's office the plaintiff stated he would complain to Deputy Warden Adams and Warden Bramlett. Moen responded by telling the plaintiff "not to act like a snitch." The plaintiff then left the office and yelled in the presence of other inmates to Moen, "Are you calling me a 'snitch'?"

C.R. 13 at 2. Defendants also asserted that despite Valandingham's contention that he had been threatened with harm as a result of being labeled a "snitch," Valandingham had never reported such an incident to prison authorities nor sought protection. *Id.*

In an affidavit attached to defendants' motion to dismiss, Randy Moen, supervisor of the prison law library, stated that he has "never called inmate Ervin T. Valandingham a snitch nor ... created any conditions which would place him in a life-threatening situation." *Id.*, Exhibit A at 1.

The facts asserted in defendants' motion to dismiss thus controvert Valandingham's allegation that Moen retaliated against Valandingham for his legal activities by labeling him a "snitch" and thereby intentionally subjected him to the threat of physical violence from other inmates.

**3. Valandingham's Response to Defendants' Motion for Summary Judgement**

In his Response to defendants' motion, Valandingham described the September 11, 1986 incident with Moen in the following terms:

[After Moen refused to copy Valandingham's documents, Valandingham] informed officer Moen he would talk to assistant Warden Jim Adams and Warden L[l]oyd Bramlett. Officer Moen responded by calling Plaintiff [a] *snitch* and telling other inmates Plaintiff was a snitch and snitch[e]s on everyone. Also

on this date officer Bojorquez lab[el]ed Plaintiff a snitch.

C.R. 19 at 2. Valandingham supported this account with an affidavit dated September 16, 1986. *Id.*, Exhibit 4. In this affidavit, Valandingham states that on September 11, 1986 Moen and Bojorquez labeled him a "snitch" and thereby placed him in a life-threatening situation in retaliation for Valandingham's attempts to seek legal redress for his grievances. *Id.*

Attached to Valandingham's Response are a number of affidavits, one of which, by Harold McFarland, supports Valandingham's contentions by asserting that McFarland had "witnessed S.G. Bojorquez and Randy Moen ... call Ted Valandingham ... a snitch and tell other inmates that Ted ... is a snitch...." *Id.*, Exhibit 11.

Thus Valandingham's retaliation claim concerned not only the September 11, 1986 incident with Moen addressed by defendants but also included an incident with Bojorquez on September 11. Moreover, Valandingham's Response presents specific facts which controvert the facts defendants asserted in their Motion to Dismiss.

### 4. Defendants' "Reply to Response to Motion to Dismiss"

The second document whose reasoning the district court relied upon in entering summary judgment, defendants' Reply to Valandingham's Response, C.R. 26, contains an affidavit in which Bojorquez states: "Neither I nor Officer Moen have ever placed an inmate in a life threatening situation." *Id.*, Exhibit A. He also states: "I have never publicly referred to any in-

mate, including inmate Valandingham, as a snitch nor have I ever stated to other inmates that Valandingham was a 'snitch' or informant." *Id.*

### 5. Conclusion (Retaliation Claim)

■ Based on the evidence described above, the district court erred in granting summary judgment for defendants. First, the question whether Moen and Bojorquez called Valandingham a "snitch" in the presence of other inmates is "material" to a section 1983 claim for denial of the right not to be subjected to physical harm by employees of the state acting under color of law. Second, this question remains a genuine issue of fact. When viewed together with Valandingham's complaint and Response, the documents of defendants upon which the district court relied as the basis for its entry of summary judgment demonstrate the existence of a dispute over whether defendants targeted Valandingham for inmate retribution by identifying him as a "snitch." Specifically, Valandingham's Response to defendants' motion to dismiss set forth specific facts, such as his description of the September 11 incidents, that contradicted the facts asserted in the affidavits of Moen and Bojorquez. Viewing the evidence in the light most favorable to Valandingham, it cannot be said that he failed to set forth specific facts showing that there is a genuine issue for trial.[1] We therefore reverse the grant of summary judgment on this claim.

### C. Denial of Legal Materials

Valandingham complains that Bojorquez and Moen denied him legal materials. Ap-

---

1. Defendants cite *Oltarzewski v. Ruggiero,* 830 F.2d 136 (9th Cir.1987), as part of their argument that Valandingham "failed to contradict the facts set forth in the affidavits of Officer Moen and Officer Bojorquez by specific facts showing there was a genuine issue for trial." Appellees' Answering Brief, at 9. This case however does not support defendants' position. In *Oltarzewski,* we affirmed the entry of summary judgment in a section 1983 case brought by a prisoner against a prison official. The prisoner had alleged that defendant retaliated against him for planning a class action by transferring him to a higher custody status. *Id.* at 137. The defendant stated in an affidavit that she had not retaliated against the prisoner and

that his transfer to a higher custody status resulted from his violation of the institution's disciplinary rules. *Id.* at 138. The prisoner, according to the court, did not controvert by affidavit any of the facts set forth in the defendant's affidavit. *Id.* Instead, the prisoner's affidavit merely challenged an unrelated assertion made in the defendant's affidavit concerning the prisoner's claim that the defendant had used "vulgar language." *Id.* In the present case, by contrast, Valandingham has contradicted the relevant facts asserted in the affidavits of Moen and Bojorquez, and done so by setting forth specific instances in which defendants allegedly labeled him a "snitch."

pellant's Opening Brief, at 1. He alleges that the denial of legal materials, like the "snitch" labeling, was in retaliation for his attempts to seek legal redress for his grievances. *Id.* at 5–6. According to Valandingham, "because he was filing grievances and lawsuits[,] . . . appellees were restricting the amount of legal materials he needed and in some cases refused to allow him any at all." *Id.* at 11.

In his complaint, Valandingham's claim for denial of legal materials stated merely, "Plaintiff has been . . . [d]enied legal materials." C.R. 1 at 6.

Defendants' Motion to Dismiss responded to this claim in Moen's attached affidavit. Moen, the supervisor of the prison law library, stated: "I have never denied legal materials or threatened to withhold such material for any reasons from inmate Valandingham." C.R. 13, Exhibit A at 2.

In Valandingham's Response to defendants' motion for summary judgment, he alleged, with respect to the claim for denial of legal materials, the following facts:

1. On August 12, 1986, Bojorquez denied him "1983 forms" and envelopes. C.R. 19 at 2. Valandingham supported this allegation with an affidavit in which he describes this incident. *Id.*, Exhibit 3.

2. On September 11, 1981, Moen refused to photocopy a number of Valandingham's legal documents. *Id.* at 2.

3. On September 16, 1986, Valandingham "was refused any legal materials by officer Bojorquez." *Id.* at 3. Valandingham supported this allegation with another affidavit in which he states that Moen and Bojorquez have refused to give him "legal supplies." *Id.*, Exhibit 4.

4. On September 27, 1986, Bojorquez refused to give Valandingham envelopes to mail legal documents to the court. *Id.* at 3. Another affidavit by Valandingham supports this allegation. *Id.*, Exhibit 12.

In their Reply to Valandingham's Response, defendants offered an affidavit in which Bojorquez, the prison law library's security officer, states: "I have never denied legal materials to inmate Ervin Valandingham." C.R. 26, Exhibit A. At-

tached to his affidavit are copies of form and material request logs which indicate that Valandingham has received legal materials. *Id.* Bojorquez asserts that "Valandingham is in regular receipt of legal materials, including paper, envelopes, folders and forms." *Id.* Defendants' Reply concludes that Valandingham "has regularly obtained legal materials when requested. . . . [and e]ven if [Valandingham], as he alleges, was not given materials on a particular date, the excerpts from the logs establish that materials were provided to him on a regular basis." *Id.* at 2.

■ On the basis of the evidence in the record, there appears to be a genuine dispute regarding whether Valandingham received legal materials. Both sides put forward specific facts supporting their contentions; while defendants' evidence—especially the logs—appears to be more credible, that is not a proper ground for granting summary judgment. Viewing the evidence in the light most favorable to Valandingham, there appears to be no basis for the district court's ruling. We therefore reverse the district court's grant of summary judgment on this claim.

## D. Communication with Other Prisoners

In his complaint, Valandingham asserted that Moen and Bojorquez had prevented him from communicating with other prisoners in the prison law library. C.R. 1 at 6. He also complained that Moen and Bojorquez had threatened him with disciplinary action if he discussed legal matters with other prisoners. *Id.* Finally, he alleged that Moen and Bojorquez had threatened him and other prisoners with disciplinary action if they exchanged or provided one another with affidavits. Valandingham argued that he had a right to provide other prisoners with legal assistance and to exchange affidavits with other prisoners because the Department "is not providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at (3) (citing *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)).

In their Motion to Dismiss, defendants assert that Valandingham is not authorized to serve as an inmate legal assistant and has refused to apply for permission as required by department policy. C.R. 13 at 3. Therefore, they argue, Valandingham could properly be subjected to disciplinary action for refusing to comply with the department policy. *Id.* They conclude that Valandingham has failed to state a claim upon which relief can be granted. *Id.*

In his Response to defendants' motion for summary judgment, Valandingham alleges the following facts:

1. On September 16, 1986 he was threatened with disciplinary action if he received affidavits from other inmates. C.R. 19 at 3.

2. On October 19, 1986 he was threatened by Bojorquez for attempting to obtain affidavits from other inmates. *Id.* In support of this allegation, Valandingham offered an affidavit in which he describes an incident in the prison library. In that incident, Valandingham and a number of other inmates witnessed the removal of a prisoner (Mr. Hood) from the law library, after which Valandingham "informed other inmates in the law library that they should fill out affidavits as to what had just happened." *Id.*, Exhibit 14. Officer Bojorquez, however, allegedly told Valandingham that "if [he] did[']t shut [his] mouth [he] would also be removed from the law library and that [Valandingham] was not to communicate with any other inmates about Mr. Hood or about [himself]." *Id.*

3. The Department "does not provide inmates with legal assistance or persons trained in the law to help inmates reach the courts." *Id.* at 5. Valandingham supports this allegation with affidavits from inmates Harold McFarland, *id.*, Exhibit 24; Scott Barnes, *id.* Exhibit 25; and Paul Sparks, *id.*, Exhibit 26 ("The prison does not provide prisoners such as myself with any kind of legal assistance to show us what to do.") & Exhibit 27.

4. Officers Moen and Bojorquez harass Valandingham because he attempts to help other prisoners with legal work. *Id.* at 5. This allegation is also supported by a number of affidavits. *See, e.g., id.*, Exhibit 24 (Harold McFarland states that Officer Bojorquez told Valandingham that "if he helped [McFarland] in any way ... he [Valandingham] would receive a disciplinary report.").

5. Valandingham has been prevented from applying to become an inmate legal assistant. *Id.* at 2. He supports this assertion with an affidavit in which he appears to state that he has attempted to apply to become an inmate legal assistant but has been blocked from completing the application because of his inability to make "copies." *Id.*, Exhibit 2.

Defendants' Reply to Valandingham's Response repeats the argument they made in their Motion to Dismiss, adding, however, that as of October 31, 1986 (approximately two weeks after Valandingham brought this action), Valandingham was authorized to act as an inmate legal assistant.

 The fact that Valandingham is now authorized to act as an inmate legal assistant renders moot his claims that the prison does not provide adequate legal assistance and that he has been threatened with disciplinary action for attempting to assist his fellow inmates. However, it does not affect his claim that he has been threatened and harassed for his attempts to obtain affidavits from other prisoners. Defendants have not controverted this claim and it therefore remains a genuine issue. Neither party has cited authority for or against the proposition that prisoners have a right to exchange affidavits in support of civil rights actions. It would seem, however, that a prisoner litigating *pro se* has the right to undertake the legal investigation and documentation of his claims in the manner that an attorney would, subject to the security and disciplinary requirements of a prison. Defendants have not argued that Valandingham's attempts to obtain affidavits in support of his lawsuit threatened any penal interests of the prison; they simply argue that he was not authorized to assist other inmates in their legal research. The district court therefore

erred in entering summary judgment on this claim.

### E. The Conspiracy Claim

■ Valandingham alleges that defendants Bramlett, Adams, and Terry[2] conspired with Moen and Bojorquez in the alleged retaliatory labeling of Valandingham as a "snitch." C.R. 1 at 7. Defendants in their papers did not directly respond to the conspiracy allegation, instead focusing their efforts on denying the underlying retaliation claim. C.R. 13 & 26. Therefore, Valandingham's allegation of a conspiracy among these five prison officials to deny him his constitutional rights remains uncontroverted by defendants. However, under Rule 56, the party opposing a motion for summary judgment may not rest on the mere allegations of his pleadings but must set forth specific facts in his response showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). Valandingham's Response to defendants' Motion for Summary Judgment nowhere alleges the specific facts required to demonstrate the existence of a genuine issue for trial. *See* C.R. 19.[3] The district court's grant of summary judgment on this claim is therefore affirmed.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

Each side is to bear its own costs.

---

**2.** Valandingham also named Director Sam Lewis as a defendant. However, Valandingham failed to allege in his complaint that Lewis was involved in the alleged conspiracy. C.R. 1. Nor did Valandingham state any other claim against Lewis. *Id.* We therefore affirm the district court's dismissal as to Lewis.

**3.** Valandingham contends that Bramlett, Adams and Terry are aware of Moen and Bojorquez' alleged acts of retaliation against Valandingham, and allow these practices to continue. C.R. 19 at (6).